## SMITH v SUTHERLAND

Docket No. 78-1386. Submitted March 7, 1979, at Detroit.—Decided October 15, 1979. Leave to appeal applied for.

Joelyn M. Smith brought an action against Peggy S. Sutherland, the operator of an automobile, and her father John J. Sutherland, the owner of the automobile, jointly and severally for recovery of noneconomic losses suffered by the plaintiff in an automobile accident. Defendants admitted liability and the question of whether the injuries sustained resulted in a serious impairment of body function was submitted to a jury. The jury returned a verdict of no cause of action, Oakland Circuit Court, John N. O'Brien, J. Plaintiff appeals alleging: (1) the court's jury instruction "the term serious impairment has been interpreted as meaning an impairment of a body function of more than ordinary severity" was erroneous and requires reversal, (2) the nonoperator-owner's liability was not affected by the enactment of the no-fault act and therefore the liability of the nonoperator-owner is controlled by the civil liability act, which would allow recovery on a mere showing of negligence based on the same accident if the suit were against the owner, therefore, the court erred in instructing that the same standard of liability applied to both defendants, and (3) defendants never introduced evidence that they were insured, therefore, it was error to require a showing that Peggy's negligence caused injuries resulting in a serious impairment of a body function as provided for in the no-fault automobile insurance statute. *Held:*

1. The no-fault automobile statute provides that tort liability for noneconomic loss shall attach if the injured person has suffered serious impairment of body function. The statute requires only that the impairment be of the kind that is ordinarily serious and it need not be more than what is an ordinarily serious (or severe) injury. A jury instruction which states that "the term serious impairment has been interpreted as meaning an impairment of a body function of more than ordinary

REFERENCES FOR POINTS IN HEADNOTES

[1-7] New Topic Service Am Jur 2d, No-Fault Insurance §§ 14-15.
Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

severity" conflicts with the statutory standard, adds to plaintiff's burden and is sufficiently misleading to require a new trial because "more than ordinary severity" does not mean the same as the word "serious", as used in the statute.

2. The court did not err in instructing the jury that the same standard of liability applied to both defendants. The civil liability act has no application in the face of a controlling statute and the no-fault act controls and sets the standard under which liability is imposed. This standard of liability is the same for both drivers and owners of motor vehicles.

3. Whether a no-fault defendant is insured is a relevant inquiry which should be addressed to the court and not the jury. In the case of a retrial the defendant should be given an opportunity to provide proof on this issue. If the person is insured, he comes under no-fault coverage and there is no problem. If the person has failed to obtain security for payment of benefits under personal protection benefits, he is not entitled to the protection of the no-fault act and traditional tort theory and procedure applies.

Reversed and remanded.

R. M. MAHER, J., concurred in part and dissented in part. He agrees with the majority that the instruction on serious impairment of body function was improper and requires reversal and that the same standard of liability applies to the defendant owner as applies to the defendant driver. However, he does not agree that the serious impairment/permanent disfigurement threshold does not apply to suits against uninjured motorists. He would hold that the threshold requirement for retained liability applies to actions against both insured and uninsured motorists.

### OPINION OF THE COURT

1. INSURANCE — NO-FAULT INSURANCE — INSTRUCTIONS TO JURY — SERIOUS IMPAIRMENT OF BODY FUNCTION.

An instruction to the jury, in an action for recovery of noneconomic losses under the no-fault automobile insurance act, explaining the phrase "serious impairment of a body function" which stated that "the term serious impairment has been interpreted as meaning an impairment of a body function of more than ordinary severity" is erroneous and misleading.

2. INSURANCE — NO-FAULT INSURANCE — INSTRUCTIONS TO JURY — TORT LIABILITY — STATUTES.

There are no standard jury instructions for cases arising under the no-fault automobile insurance act and there are no statu-

tory definitions for the thresholds for retained tort liability under the act; each factual situation is to be considered on a case by case basis (MCL 500.3135; MSA 24.13135).

3. INSURANCE — NO-FAULT INSURANCE — INSTRUCTIONS TO JURY — SERIOUS IMPAIRMENT OF BODY FUNCTION — STATUTES.

Jury instructions explaining the phrase "serious impairment of a body function", in cases involving retained tort liability under the no-fault automobile insurance act, are not reversibly erroneous where the instructions given do not detract from the statutory standard or allow recovery in more limited situations than the statute itself (MCL 500.3135; MSA 24.13135).

4. INSURANCE — NO-FAULT INSURANCE — TORT LIABILITY — DRIVERS — OWNERS — STATUTES.

The standard for retained tort liability under the provisions of the no-fault automobile insurance act is the same for drivers as for nonoperator owners (MCL 500.3135; MSA 24.13135).

5. INSURANCE — NO-FAULT INSURANCE — TORT LIABILITY — QUESTION OF INSURANCE — TRIAL — STATUTES.

The no-fault automobile insurance act abolishes tort liability only as to those defendants who are insured pursuant to the no-fault act; therefore, whether a defendant is insured is a relevant inquiry; however, such inquiry must be addressed to the court rather than the jury because of a statutory ban on injecting the issue of insurance into a trial (MCL 500.3135; MSA 24.13135).

PARTIAL CONCURRENCE, PARTIAL DISSENT BY R. M. MAHER, J.

6. INSURANCE — NO-FAULT INSURANCE — NONECONOMIC LOSS — TORT LIABILITY — STATUTES.

*Tort liability for noneconomic loss resulting from minor injuries is absolutely prohibited under the no-fault automobile insurance act; the statutory provision prohibiting such liability makes no distinction between the insured and uninsured status of the tortfeasor (MCL 500.3135; MSA 24.13135).*

7. INSURANCE — NO-FAULT INSURANCE — TORT LIABILITY — INSURED MOTORIST — UNINSURED MOTORIST — STATUTES.

*The no-fault automobile insurance act abolishes all tort liability for insured motorists, with the exception of loss resulting from intentional torts, noneconomic loss from serious injuries, and expenses, work loss and survivor's loss benefits in excess of the statutory limitations; uninsured motorists remain liable for all economic losses and for noneconomic loss except as limited by*

the threshold provision of the act (MCL 500.3135; MSA 24.13135).

*Rosenbaum, Bloom, Kaufman, Appel & Moses,* for plaintiff.

*Condit & McGarry, P.C.,* for defendant.

Before: N. J. KAUFMAN, P.J., and T. M. BURNS and R. M. MAHER, JJ.

T. M. BURNS, J. Plaintiff brought this suit to recover for injuries sustained in an automobile accident on March 21, 1976. Defendants admitted liability and the question of whether the injuries sustained resulted in a "serious impairment of body function", MCL 500.3135; MSA 24.13135, was submitted to a jury. A judgment of no cause of action was entered on the verdict returned and plaintiff appeals by right. We reverse.

The trial court instructed that plaintiff must demonstrate that her injuries resulted in a serious impairment of a body function before she could recover damages. But, in explaining the phrase the court indicated, "the term serious impairment has been interpreted as meaning an impairment of a body function of more than ordinary severity". This instruction is erroneous and sufficiently misleading to require a new trial.[1]

There are no standard instructions for no-fault cases and no statutory definitions for the thresholds of retained liability in § 3135. The courts have been commanded to consider each factual situation

---

[1] Below, plaintiff objected to the instruction as given and the refusal of the trial court to give a different instruction which she had requested. It is unnecessary to decide whether it was error to refuse to give plaintiff's requested instruction in exactly the terms proposed. We would note, however, that the court should have instructed that a serious impairment of a body function need not be permanent.

on a case by case basis. See, *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441; 208 NW2d 469 (1973). In reviewing a trial court's instructions, no reversible error has been found where the instructions given do not detract from the statutory standard or allow recovery in more limited situations than the statute itself. *Stevens v Hogue,* 85 Mich App 185; 270 NW2d 735 (1978).

The instruction above conflicts with the statutory standard. In the context in which it was used in this case, "more than ordinary severity" is not the same as "serious". The statute requires only that the impairment be of a kind that is ordinarily serious, it need not be more than what is an ordinarily serious (or severe) injury. No one could doubt that injuries which rendered an individual a quadraplegic are injuries which result in a serious impairment of a body function. Under the trial court's instruction, the quadraplegic plaintiff would be unable to recover for his injury unless he could establish that his condition was *more* severe than the ordinary serious type of injury which results in quadraplegia.

The court's instruction increased the plaintiff's burden and requires a new trial. We would refer the court to *McKendrick v Petrucci,* 71 Mich App 200; 247 NW2d 349 (1976), *Cassidy v McGovern,* 86 Mich App 321; 272 NW2d 644 (1978), and *Stevens v Hogue, supra,* for guidance in framing the instruction on a retrial.

Plaintiff raises a number of other issues, but only two require discussion. Plaintiff sued both the driver of the car which struck her and the owner of that car. Plaintiff argues that the nonoperator-owner's liability was not affected by the enactment of the no-fault act. Under plaintiff's theory, the liability of the nonoperator-owner is controlled by

the civil liability act, MCL 257.401 *et seq.*; MSA
9.2101 *et seq.*[2] Under this view, an injured individ-
ual would not need to show an injury resulting in
death, serious impairment of a body function or
permanent serious disfigurement to recover
against a negligent driver of a motor vehicle, but a
mere showing of negligence, based on the same
incident, if suit were against the owner.

We cannot agree. MCL 500.3135; MSA 24.13135
provides, in relevant part:

"(1) A person remains subject to tort liability for
noneconomic loss caused by his *ownership,* maintenance
or use of a motor vehicle only if the injured person has
suffered death, serious impairment of body function or
permanent serious disfigurement.

"(2) Notwithstanding any other provision of law, tort
liability arising from the ownership, maintenance or
use within this state of a motor vehicle with respect to
which the security required by subsections (3) and (4) of
section 3101 was in effect is abolished except as to:

*   *   *

"(b) Damages for noneconomic loss as provided and
limited in subsection (1).

"(c) Damages for allowable expenses, work loss and
survivor's loss as defined in sections 3107 to 3110 in
excess of the daily, monthly and 3 year limitations
contained in those sections." (Emphasis added.)

From the language of the statute we can only
conclude that the standard of liability is the same
for drivers and owners. The civil liability act still
provides a basis for imposing liability, where none
would exist in the absence of the statute, *Wieczo-*

---

[2] This statute provides in part: "The owner of a motor vehicle shall
be liable for any injury occasioned by the negligent operation of such
motor vehicle whether such negligence consists of a violation of the
provisions of the statutes of the state or in the failure to observe such
ordinary care in such operation as the rules of the common law
requires."

*rek v Merskin,* 308 Mich 145, 148; 13 NW2d 239 (1944), but the standard under which liability is imposed is furnished by § 3135 of the no-fault act. There was no error in instructing that the same standard of liability applied to both defendants.

Plaintiff argues that since defendants never introduced evidence that they were insured it was error to require a showing that defendant driver's negligence caused injuries resulting in a serious impairment of a body function. As recently pointed out in *Stevens v Hogue, supra,* whether defendants were insured is a relevant inquiry. But, it is addressed to the court, not the jury. Defendants should have the opportunity to provide proof on this issue before the retrial ordered herein.

Since there is no indication on the present record that defendant owner's car was insured, it is necessary to discuss the standard of liability as if the car were uninsured. There has been much confusion in regard to whether a different standard applies depending on the insured or uninsured status of the defendant. Several panels of this Court, by focusing on the language of § 3135(1) and the absence of any mention of insurance in that subsection, have concluded that a defendant's lack of insurance is irrelevant—a plaintiff still must meet one of the thresholds before liability is imposed. See, *e.g., McKendrick v Petrucci, supra, Cassidy v McGovern, supra* and *Schigur v West Bend Mutual Ins Co,* 80 Mich App 640; 264 NW2d 83 (1978), *lv gtd* 402 Mich 950q (1978).

Without making a specific holding on the point, the Supreme Court seems to have read the statute as contemplating the opposite result. *Shavers v Attorney General,* 402 Mich 554, 624; 267 NW2d 72 (1978).

The confusion appears to stem from the orga-

nization of the statute, as set out above. The *McKendrick* panel and cases which have followed it treat subsection (1) as the operative subsection. However, it appears that subsection (2) actually controls this question. Subsection (2) abolishes tort liability *only if* the defendant is insured. One of the exceptions to this abolition of tort liability, set out in subsection (2)(c), is that provided and limited in subsection (1). Unless a defendant has brought himself within § 3135(2) by purchasing insurance, § 3135(1) would not apply. This is how the statute was construed by the Supreme Court in *Shavers.*

We hold, therefore, that an individual who has failed to obtain "security" as required by MCL 500.3101; MSA 24.13101 is not entitled to the protection of § 3135 and as to that individual, traditional tort liability is retained. If, in this case, the defendant owner's car is found to have been uninsured, plaintiff need not meet the thresholds of § 3135(1) and would attempt to recover under traditional tort theory and procedure. See, Birkinsha, *Insurance Law, 1975 Annual Survey of Michigan Law,* 22 Wayne L Rev, 535, 539 (1976).

Plaintiff has raised a number of other issues. All have been considered. The evidentiary issues are without merit. The other issues need not be discussed in light of the holdings above.

Reversed and remanded. Costs to appellant.


N. J. KAUFMAN, P.J., concurred.


R. M. MAHER, J. *(concurring in part, dissenting in part).* I agree that reversal is required and concur in the majority opinion as to the first two issues. I cannot agree, however, that the serious impairment/permanent disfigurement threshold

does not apply to suits against uninsured motorists.

The language of the statute is clear. MCL 500.3135(1); MSA 24.13135(1), abolishes tort liability for noneconomic loss *(e.g.* pain and suffering, emotional distress) resulting from minor injuries. Recovery of noneconomic loss from minor injuries is absolutely prohibited. The focus is on the seriousness of the injury; no mention is made of the insured or uninsured status of the tortfeasor. It is subsection (2) of § 3135 which deals with the exemption from liability of insured—as opposed to uninsured—motorists. As to insured motorists, *all* tort liability, including liability for both noneconomic loss and economic loss *(e.g.* lost wages, medical expenses), is abolished, with the exception of loss resulting from intentional torts, noneconomic loss from serious injuries, and expenses, work loss and survivor's loss in excess of the statutory limitations. Uninsured motorists remain liable for *all* economic losses and for noneconomic loss except as limited by the threshold provision in subsection (1).

For example, if a claimant is injured through the negligence of an uninsured motorist, suffering neither serious impairment of body function nor permanent serious disfigurement, he may not bring an action for noneconomic loss such as pain and suffering. If he has suffered loss of wages and incurred medical costs, however, he is entitled to maintain an action against the uninsured motorist to recover those losses. If, on the other hand, this same claimant has been injured to the same extent by an insured motorist, he is not entitled to maintain an action either for noneconomic loss or for his lost wages and medical expenses (assuming that his losses do not exceed the statutory limits),

but must obtain PIP benefits from his insurer (or from another insurer if the statute so provides).

It should be noted that a person injured by an uninsured motorist will in most cases be entitled to first-party benefits (reimbursing him for economic loss) either from his own insurer or from the assigned claims fund.[1] The injured person's right of action against the uninsured motorist will therefore be exercised by an insurance company entitled to subrogation by reason of having compensated the injured person for his economic loss.

To hold, as the majority does, that a person injured by an uninsured motorist may sue for noneconomic loss for injuries which do not meet the threshold of § 3135(1) is to give the victim of an uninsured motorist a right to recover benefits which the person injured by an insured motorist does not have. Both classes of injured persons are entitled to recover for economic loss from the insurer of the injured person, the driver or the vehicle owner. Where no one involved in the accident is insured, the injured person is entitled to benefits from the assigned claims fund. In addition, both classes of injured persons are entitled to sue for noneconomic loss if their injuries meet the threshold requirements of § 3135(1). Under no circumstances may the victim of an insured motorist recover noneconomic loss unless his injury meets the threshold. The same should be true of the victims of uninsured motorists.

Although it is true that the Supreme Court in *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978), in ruling on a due process and equal protection challenge to the no-fault statute, apparently assumed that traditional tort liability

---

[1] Assuming, of course, that recovery is not barred by MCL 500.3113; MSA 24.13113.

continues as to uninsured motorists, the Court did not clearly hold that its interpretation of § 3135 applied the threshold requirement only to insured tortfeasors.[2] Until the Supreme Court expressly rules on the question, I will adhere to the view expressed in *Schigur v West Bend Mutual Ins Co,* 80 Mich App 640; 264 NW2d 83 (1978), and *McKendrick v Petrucci,* 71 Mich App 200; 247 NW2d 349 (1976).[3]

I would hold that the threshold requirement applies to actions against both insured and uninsured motorists.

---

[2] The Supreme Court in a footnote in *Shavers,* cited in text *supra,* assumed that the Legislature intended to retain traditional tort liability for uninsured motorists as an incentive to purchase insurance. In view of the penalties imposed elsewhere in the statute, MCL 500.3113; MSA 24.13113, the slight additional threat of a claim for noneconomic benefits for minor injuries seems unlikely to provide a substantial incentive to purchase insurance.

[3] Leave to appeal has been granted in *Schigur,* 402 Mich Mich 950q (1978).